(107 So. 566)

No. 25546.

## STANDARD OIL CO. v. SUGAR PRODUCTS CO.

(Feb. 1, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Appeal and error ☞917(1).**

In disposing of an exception of no cause of action, facts well pleaded in plaintiff's petition will be accepted as true.

**2. Sales ☞343, 344—Defendant, securing by misrepresentation fuel oil in excess of what plaintiff was obligated to deliver under contract, is liable to plaintiff for difference between contract and market price of excess fuel (Rev. Civ. Code, arts. 2293, 2294, 2301; Code Prac. art. 18).**

Where defendant, which had contracted with W. Oil Company for purchase of fuel oil to bunker its ships, at specified prices, secured by fraud and misrepresentation oil in excess of what was necessary as fuel from plaintiff company, which had obligated itself to W. Company to furnish oil to which defendant was entitled, plaintiff, in view of Rev. Civ. Code, arts. 2293, 2294, 2301 (Code Prac. art. 18), had cause of action against defendant for difference between contract price and market price of oil secured in excess of contract requirements.

**3. Contracts ☞5—He who receives that which is not due him through error or knowingly obligates himself to restore it to one from whom he has unduly received it (Rev. Civ. Code, arts. 2293, 2294, 2301; Code Prac. art. 18).**

In view of Rev. Civ. Code, arts. 2293, 2294, 2301 (Code Prac. art. 18), one who receives that which is not due him, whether he receives it through error or knowingly, obligates himself to restore it to the one from whom he unduly received it.

**4. Evidence ☞82—It will be presumed that all property of company in state passed into hands of its ancillary receiver appointed by federal court, and was administered by him before final discharge.**

Where original receiver of corporation in New York was appointed ancillary receiver in Louisiana, it will be presumed that all property of bankrupt in Louisiana passed into hands of ancillary receiver, and that such property was administered by him before his final discharge.

**5. Evidence ☞66—Ancillary receiver of corporation appointed by federal court will be presumed to be aware of pendency of suit in civil district court of state.**

Ancillary receiver of corporation, appointed by federal court, will be presumed to be aware of pendency of suit against corporation in civil district court of state.

**6. Evidence ☞66—Original receiver of corporation appointed by federal court, who was also ancillary receiver in Louisiana, will be presumed to be aware of suit in state court in Louisiana.**

Where original receiver, appointed by federal court, was same person as ancillary receiver appointed in Louisiana, the original receiver is presumed to have notice of suit against corporation in Louisiana state court.

**7. Receivers ☞210—State court is without power to make original receiver, appointed in another state by federal court, party defendant, where he had not appeared, and consent of federal court was not obtained.**

In suit against corporation in Louisiana, state court *held* without judicial power to make original receiver of corporation, appointed by federal court in New York, party defendant to the suit, where such receiver had not made a voluntary appearance in the state court, and plaintiff had not obtained consent of federal court to sue receiver in state court.

8. Receivers ⬤⟿174(1)—Receiver, as appointed by federal court, cannot be sued in state court without federal court's consent, and want of leave is jurisdictional.

Receiver, as appointed by federal court, cannot be sued in state court without federal court's consent, and want of leave is jurisdictional.

9. Receivers ⬤⟿174(1)—Statute authorizing suit against receivers appointed by federal court without leave of court inapplicable to cause of action arising before receivers appointed.

Judicial Code, § 66 (U. S. Comp. St. § 1048), authorizing suits against receivers appointed by federal courts in respect to their acts in carrying on business without leave of court, is inapplicable to cause of action arising before receivers were appointed.

10. Receivers ⬤⟿209—State court will protect citizens in controversy between foreign receiver and resident attaching creditor.

A state court will protect its own citizens, where there is a controversy between a foreign receiver and attaching creditor who resides in the state, and such attachment proceedings may be instituted subsequently to and notwithstanding the foreign appointment.

11. Receivers ⬤⟿209—Recognition of foreign receiver by state courts by comity only, and will not be extended to detriment of resident creditor.

The recognition by state courts of foreign receivers is by comity only, and is not extended to the detriment of the citizens of the state or the property of resident creditors.

12. Appearance ⬤⟿8(7)—Attachment bond held sufficient voluntary appearance by nonresident company to justify personal judgment against it.

In suit in state court against nonresident corporation, where defendant's property was attached in state court, prior to the appointment of foreign receiver, and a bond was given by the nonresident defendant for the release of seized property, there was sufficient voluntary appearance by defendant in state court to justify personal judgment against it.

Appeal from Civil District Court, Parish of Orleans; Wynne G. Rodgers, Judge.

Action by the Standard Oil Company against the Sugar Products Company. From a judgment sustaining defendant's exception of no cause of action, and dismissing plaintiff's suit, the plaintiff appeals. Reversed and remanded.

Lemle, Moreno & Lemle, of New Orleans, for appellant.

Spearing, Miller & Mabry, of New Orleans, amici curiæ.

LAND, J. Plaintiff company has appealed from a judgment sustaining an exception of no cause of action and dismissing its suit.

[1] Accepting as true the facts well pleaded in the petition, for the purpose of disposing of the exception, we have before us a state of facts substantially as follows:

On September 15, 1919, the defendant, the Sugar Products Company, entered into a written contract with the West India Oil Company for the sale by said company and the purchase by the Sugar Products Company of fuel oil to bunker certain steamships belonging to defendant.

Under this contract, the Sugar Products Company had the right to have its ships bunkered at the price of 85 cents per barrel in the port of New Orleans, at $1.50 per barrel at all Cuban ports, and at $1.20 per barrel at New York, Baltimore, and Norfolk.

Plaintiff company, the Standard Oil Company, entered into a contract with the West India Oil Company whereby it obligated itself to said company, to furnish the defendant, the Sugar Products Company, such bunker oil as said company had the right to demand of the West India Oil Company by virtue of the contract entered into between the latter company and the Sugar Products Company.

Defendant company, the Sugar Products Company, called upon plaintiff company for oil for bunkering its vessels in the port of New Orleans, and received from the Standard Oil Company, at various times, a total of 25,768.74 barrels, but used for bunkering purposes only 3,100 barrels. The remaining

22,668.74 barrels were used by defendant company as cargo oil; the difference between the contract price of 85 cents per barrel and the market price being $18,161.30.

Plaintiff company, the Standard Oil Company, has instituted the present suit to recover this amount, on the ground that the delivery of the oil was made by it in error, induced by the representations of ·defendant company, the Sugar Products Company, that said oil was to be used as fuel by its vessels under the contract between the parties.

[2] We are of the opinion that the petition of plaintiff company, alleging this state of facts, discloses a cause of action.

It is clear that, under the contract between the West India Oil Company and the Sugar Products Company, as well as under the contract between the West India Company and the Standard Oil Company, defendant company could demand and legally receive oil *for fuel purposes only*, at a fixed price of 85 cents per barrel.

It is also equally clear that plaintiff company, the Standard Oil, could collect from the West India Oil Company only 85 cents per barrel, under its contract with said company, for all oil furnished by plaintiff company to defendant, the Sugar Products Company, if the latter company failed or refused to pay for the oil delivered.

· When defendant company ordered oil from plaintiff company in excess of the needs of its ships for bunkering purposes, it obtained such oil, not by virtue of its written contract with the West India Oil Company, but by a fraud practiced upon plaintiff company, which had undertaken to fulfill the obligation of the West India Oil Company to defendant, the Sugar Products Company.

[3] Plaintiff company, in delivering this oil through error and misrepresentation to defendant company, manifestly was not acting as the agent of the West India Oil Company, but was acting for itself, as plaintiff company had gone beyond the terms of its contract of agency in making such delivery. On the other hand, defendant company, in accepting delivery of this oil, secured it, not by any right to claim the oil under the contract, but through error and by misrepresentation, and was clearly obligated to return it to plaintiff company, which had agreed, by no means, to set up defendant company in the oil business, as a competitor in the open market.

"He who receives what is not due him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it." R. C. C. art. 2301; C. P. art. 18; R. C. C. arts. 2293, 2294.

It sufficiently appears from the allegations of the petition that the property of plaintiff company was tortiously taken as cargo oil, and converted into money by defendant company. Steamship Co. v. Stewart, 44 So. 138, 119 La. 392.

We conclude, therefore, that the petition of plaintiff company sets forth a cause of action, and that the exception of no cause of action tendered by defendant company should have been overruled by the trial judge.

2. The appeal from the judgment of the lower court sustaining the exception of no cause of action was taken *on June 19, 1922.*

It is suggested by amici curiæ:

"That *later*, in the federal court for the state of New York, the Sugar Products Company was placed in the hands of a receiver, and Mr. Robert Szold was duly appointed and qualified as receiver of said Sugar Products Company by the federal court for the Southern district for the state of New York.

"That *thereafter* in the suit entitled 'Interocean Oil Company v. Sugar Products Company,' and numbered 16939 of the docket of the United States District Court for the Eastern District of Louisiana, New Orleans Division. by an order of court signed *April 12, 1922,* by Hon. Rufus E. Foster, judge of the said court, Mr. Robert Szold, the said receiver appointed by the United States District Court for the Southern District for the state of New York, was appointed ancillary receiver of the Sugar Products Company, duly qualified as such, and,

after rendering his account, was discharged as ancillary receiver of Sugar Products Company by an order signed by the said Hon. Rufus E. Foster on *April 13, 1923*, as evidenced by a certified copy of the said order annexed hereto and made part hereof."

"That on the —— day of October, 1925, Messrs. Merrick & Schwartz, who had represented Sugar Products Company, defendant appellee herein, in the proceedings in the civil district court withdrew as attorneys of record, and there is now no one representing defendant appellee herein.

"Appearers further inform the court that said receiver has never been made a party to this suit either in the civil district court or in the Supreme Court."

The present suit was filed October 31, 1921, in the civil district court for the parish of Orleans, and on November 10, 1921, the Sugar Products Company, a nonresident corporation of the state of New Jersey, executed a bond with the United States Fidelity & Guaranty Company as surety for the release of various properties seized and taken into custody by the sheriff in this case, under the writ of attachment and garnishment process issued herein against defendant company.

It is clear, from the record and the information furnished by the amici curiæ, that the property of defendant had been attached by plaintiff in the civil district court for the parish of Orleans, prior to the appointment of both the original receiver in the state of New York and the ancillary receiver in this state.

[4] None of the assets of defendant company are in the custody of the civil district court for the parish of Orleans. It must be presumed that all of the property of said company in this state passed into the hands of the ancillary receiver and has been administered by him, as he was finally discharged April 13, 1923.

[5] It must be presumed also that the ancillary receiver was aware of the pendency of this suit in the civil district court for the parish of Orleans.

[6] As the ancillary receiver appointed by

160 La.—25

the federal court for the Eastern district of Louisiana is the same person appointed receiver of defendant company by the federal court for the Southern district of New York, it must be presumed also that the original or present receiver of said company had notice of this suit.

[7] As the federal receiver has not seen fit to make a voluntary appearance in the civil district court for the parish of Orleans for the purpose of defending this suit, and as plaintiff company has not obtained the consent of the federal court of New York to sue its receiver in the state court, it is not within our judicial power to make the original or present receiver a party defendant to this suit.

[8] Receivers appointed by a federal court cannot be sued in a state court without the consent of the federal court, and want of leave thereof is jurisdictional.

[9] Judicial Code, § 66 (U. S. Comp. St. § 1048), authorizing suits against receivers appointed by federal courts, in respect of their acts in carrying on the business, without leave of court, is inapplicable to a cause of action arising *before* receivers were appointed. Godchaux v. Texas & Pac. Ry. Co. et al. 92 So. 398, 151 La. 955.

Plaintiff company has not levied upon assets in the hands of a foreign receiver, who is within the jurisdiction of the civil district court of the parish of Orleans.

[10] The property of defendant company was attached in a state court prior to the appointment of the foreign receiver. The attaching creditor is domiciled in this state. Our courts will protect its own citizens, where there is a controversy between a foreign receiver and an attaching creditor who resides in the state, and such proceedings may be instituted subsequently to and notwithstanding the foreign appointment.

[11] The recognition by state courts of foreign receivers is by comity only, and is not extended to the detriment of citizens of the

state, or to the prejudice of resident creditors. 34 Cyc. VIII, Foreign and Ancillary Receivers, pp. 484, 491.

The ancillary receivership passed out of existence with the final discharge of the receiver by the federal court for the Eastern district of Louisiana in the year 1923.

[12] Upon the face of the record, defendant company, a nonresident corporation, has made a voluntary appearance in this case, sufficient to justify a personal judgment against it. In our opinion, the proper defendant is now before the court.

It is therefore ordered that the judgment appealed from be annulled and reversed. It is now ordered that this case be remanded to the lower court, reinstated upon the docket of said court, and proceeded with according to law.

ROGERS, J., recused.