**URANIA LUMBER CO., Limited, v. POWERS & CRITCHETT LUMBER CO. et al.**

**No. 5175.**

Court of Appeal of Louisiana. Second Circuit.

March 2, 1936.

Moss & Moss, of Winnfield, and A. D. Flowers, of Jena, for appellants.

Thornton, Gist & Richey, of Alexandria, for appellee.

HAMITER, Judge.

This suit was filed August 4, 1934. Plaintiff alleges in substance that it is the owner and in the actual possession of the south half of the southwest quarter of the northeast quarter of section 2, township 11 north, range 2 east, Caldwell parish, La., containing 20 acres more or less; that at some time during the previous five years, Frank Wooten, Isiah Wooten, and the Powers & Critchett Lumber Company, a partnership composed of D. J. Critchett, C. W. Powers, and George H. Woods, went upon said land and cut and removed therefrom approximately 200,000 feet of pine and hardwood timber of the average value of $10 per thousand feet; and that it did not learn that said timber had been cut and removed by said defendants until the month of November, 1933. It seeks a solidary judgment for $2,000 against said partnership, the individual members thereof, and the other named defendants.

An exception of misjoinder was filed, averring that George H. Woods was not a member of the partnership at the time of the alleged trespass. The exception was referred to the merits. Thereafter, reserving all rights under the exception, Powers & Critchett Lumber Company and the alleged partners, through counsel, filed answer, generally denying the allegations of the petition, and, further, specially pleaded prescriptions of one, three, and five years. They also included in the answer a call in warranty and asked for such judgment against Isiah Wooten and Frank Wooten as might be rendered against them.

Frank Wooten and Isiah Wooten, in proper persons, filed answers, and generally denied plaintiff's allegations. They also specifically pleaded the prescription of one year.

The trial court granted judgment in favor of plaintiff and against Powers & Critchett Lumber Company, D. J. Critchett, C. W. Powers, Frank Wooten, and Isiah Wooten, in solido, for $352.35, together with interest and costs, and thus overruled their pleas of prescription; rejected and dismissed plaintiff's demands as against George H. Woods; and rendered judgment in favor of Powers & Critchett Lumber Company, C. W. Powers, and D. J. Critchett, against Frank Wooten and Isiah Wooten upon their call in warranty. From this judgment defendants Powers & Critchett Lumber Company, D. J. Critchett, and C. W. Powers perfected a suspensive appeal. No appeal was prosecuted by defendants Frank Wooten and Isiah Wooten.

An answer to the appeal has been filed in this court by plaintiff, in which it asks that the judgment be amended by increasing the amount to $2,000.

Appellants concede that plaintiff has a good and valid title to the property, and this concession is fully justified by the evidence. Further, the pleas of prescriptions of three and five years have been abandoned. With these matters eliminated, the record presents two possible questions. The first involves the prescription of one year, and is founded on the contention that plaintiff had knowledge of the cutting of the timber, within the meaning of Act No. 33 of 1902, before a year prior to the making of judicial demand. If it is determined that such plea of prescription is not well founded, the second question, regarding the amount of timber cut and the value thereof, then arises.

The Supreme Court of this state has held in numerous cases that an action for the value of timber tortiously cut and removed from land is governed by the prescription of one year, under the provisions of article 3536 of the Civil Code. Ducros

v. St. Bernard Cypress Co., 164 La. 787, 114 So. 654; Shields v. Whitlock & Brown, 110 La. 714, 717, 34 So. 747; Antrim Lumber Co. v. S. H. Bolinger & Co., 121 La. 306, 46 So. 337; Poirier v. Burton-Swartz Cypress Co., 127 La. 936, 54 So. 292; Schwing Lumber, etc., Co. v. Peterman, 140 La. 71, 72 So. 812.

Prior to the regular session of the Legislature of 1902, this prescription began to run from the date of the trespass. Shields v. Whitlock & Brown, supra; Gilmore v. Schenck, 115 La. 386, 39 So. 40.

However, article 3537 of the Civil Code was amended by Act No. 33 of 1902, so as to provide that where land, timber, or property has been injured, cut, damaged, or destroyed, the prescription of one year runs from the date knowledge of such damage is received by the owner thereof.

■ The well-settled jurisprudence of this state relating to the matter of prescription under such article 3537 of the Civil Code, as amended, holds that the burden of proof is on the one against whom the prescription is pleaded to show when he obtained knowledge of ·the trespass, whenever a year has intervened between the infliction of the damage and the service of citation in the suit to recover therefor. Ducros v. St. Bernard Cypress Co., supra; Citizens' Bank v. Jeansonne, 120 La. 393, 45 So. 367; National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234.

■ Giving our attention to the evidence, we find that in the year 1900, Joseph and Frank Wooten purchased a tract of land at tax sale, the deed specifically describing 120 acres, but following the description are the words, "containing 160 acres of land, more or less." The 20-acre tract involved herein being a part of the 40 acres of land adjoining the property actually described in such deed, said purchasers believed that they owned it.

Some time after the year 1920, Isiah Wooten, the son of Joseph Wooten, and Frank Wooten sold all of the pine timber on such tract to the Powers & Critchett Lumber Company for a stipulated price per thousand feet, the agreement providing for the timber to be cut and sawed by vendors, and received payment therefor. Plaintiff contends that the timber was cut from said land during the year 1926, while defendants claim the cutting took place in 1922. The great preponderance of the testimony indicates that 1922 was the correct year.

Adjoining the 20 acres on its south is a 40-acre tract owned by plaintiff, its holdings in that vicinity being nearly 1,000 acres. West of the tract is a public road running in a northerly-southerly direction, the northwest corner of the tract being about 150 yards from the road, and the southwest corner about 60 yards therefrom. The Louisiana Central Lumber Company owns several hundred acres in that locality; some of its property being contiguous to the 20-acre tract on the west.

Mr. H. E. Hartner, president of plaintiff company, testified that he first learned of the cutting of the timber in the late fall of 1933; that this knowledge was obtained by sending employees there, when the Louisiana Central Lumber Company began cutting piling in that neighborhood, to see if such last-mentioned company was operating across its line. Mr. Hartner could not state the exact time in 1933 when he received knowledge of the trespass.

The testimony of Mr. Q. T. Hartner, plaintiff's general manager, is that he learned of the cutting in the latter part of 1933, and wrote a letter, dated November 20, 1933, to Powers & Critchett Lumber Company, when he obtained this information. When asked if he knew how long prior to the date of the letter he discovered the trespass, he answered: "Probably a few days before that. I wrote him as soon as I had the information."

Mr. Carey McCartney, who principally looks after timber trespasses for plaintiff company, stated that he discovered that the 20 acres was denuded of its timber in 1933 when the Louisiana Central Lumber Company was cutting piling, and that he ran the lines from where it was cutting. He reported the trespass as soon as his discovery was made. He could not recall the time in 1933 that he made this discovery, but he supposed it was after August.

Mr. G. M. Tannehill, vice president of plaintiff company, occasionally passed along such road. He stated that the trespass was discovered in the latter part of 1933, a few days before the above-mentioned letter was written.

Mr. Frank Kees, a member of the land department of the Louisiana Central Lumber Company since 1926, was called as a witness for plaintiff. He testified that his company was cutting and hauling piling in the vicinity of the 20-acre tract from May 1st to August 1st, in the year 1933.

It is shown by a preponderance of the evidence that the officers and employees of plaintiff company passed along the above-described public road, on numerous occasions after the year 1922, looking after the timber and plaintiff's cattle which ranged in that locality; and, further, that persons, while standing on or traveling such road, near the tract, could determine that the timber had been cut if they sought to do so.

The testimony given by plaintiff's witnesses to the effect that plaintiff learned of the trespass in 1933, when the Louisiana Central Lumber Company began cutting piling in that vicinity, and that company was cutting piling there in the year 1933, from May 1st to August 1st, when considered in connection with the fact that this suit was filed more than a year after such last-mentioned date, is extremely detrimental to plaintiff's position herein. To say the least, it certainly detracts from the effectiveness of the other testimony given in its behalf. Further, the lapse of approximately twelve years from the date of the trespass until the filing of this suit on August 4, 1934, coupled with the well-proven fact that officers and employees of plaintiff company passed frequently, during that period, within 100 yards of the tract, tends to strongly suggest and indicate that the diligence required of plaintiff was lacking.

The Supreme Court of the United States, in the case of Foster v. Mansfield, Coldwater & Lake Michigan Railroad Co., 146 U. S. 88, 13 S.Ct. 28, 32, 36 L.Ed. 899 (quoted from with approval in Erwin v. Lee Lumber Co., 163 La. 191, 111 So. 673), stated:

"The defense of want of knowledge on the part of one charged with laches is one easily made, easy to prove by his own oath, and hard to disprove; and hence the tendency of courts in recent years has been to hold the plaintiff to a rigid compliance with the law, which demands, not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of all the facts."

The Supreme Court of this state, in passing on the case of Spyker et al. v. International Paper Co., 173 La. 580, 138 So. 109, 111, involving the applicability of the one-year prescription to an action for the destruction of timber, used this language:

"Our conclusion is that the plea of prescription of one year is good as to timber destroyed before May 2, 1927, on the ground that the plaintiffs knew, or should have known of the damages, and more than a year elapsed after the prescription began to run and before suit was filed."

Considering the evidence in its entirety, and the law applicable to the case at bar, we cannot say that plaintiff has borne its burden of proving, with legal certainty, that judicial demand was made within one year after it received knowledge of the trespass. It is our duty, therefore, to hold that the pleas of prescription of one year filed by appellants should have been sustained.

Accordingly, and for the reasons herein given, it is ordered that the judgment appealed from be annulled, avoided, and reversed, and plaintiff's demands rejected, as to Powers & Critchett Lumber Company, C. W. Powers, and D. J. Critchett; that said judgment be affirmed in all other respects; and that costs of this appeal shall be paid by plaintiff.